## PITTS v. DRUMMOND.

No. 29859.   May 6, 1941.

Rehearing Denied Oct. 28, 1941.

*118 P. 2d 244.*

R. A. Barney, of Pawhuska, for plaintiff in error.

Chas. R. Gray and W. N. Palmer, both of Pawhuska, for defendant in error.

GIBSON, J. This is an action on note and to foreclose mortgage executed by a full-blood Osage Indian on his inherited tribal lands. Judgment was for plaintiff, and the defendant mortgagor appeals.

Defendant takes no exception to the judgment so far as the indebtedness is concerned, but alleges that by reason of certain acts of Congress relating to the property and affairs of the Osages the mortgaged premises were restricted lands and not subject to alienation without the approval of the Secretary of the Interior. Section 7, Act of April 18, 1912 (37 Stat. 86); sec. 3, Act of February 27, 1925 (43 Stat. 1008). The cross-petition seeks cancellation of the mortgage.

The lands in question were inherited by defendant from his wife, who was a full-blood Osage. They consisted of the wife's individual allotment and allotments of relatives inherited by her.

Plaintiff says there were no restrictions of any kind, or prohibition against the sale or encumbrance of the mortgaged premises at the time the mortgage was executed. It is asserted that section 6 of the Act of 1912, above, removed all restrictions on the alienation of inherited lands of Osages holding certificates of competency; that the defendant held such a certificate and was therefore capable of executing the mortgage without authorization or approval by the Secretary of the Interior.

Said section 6, so far as material here, provides in substance that thereafter the lands of deceased Osage allottees might be partitioned by agreement of the heirs or by order of the proper Oklahoma court, except that the partition of restricted lands of such deceased allottees should be approved by the Secretary of the Interior; and there was the further provision, "When the heirs of such deceased allottees have certificates of competency or are not members of the tribe, the restrictions on alienation are hereby removed."

The defendant held a certificate of competency. He apparently came within the latter provision removing restrictions on alienation.

But defendant says that, since the estate of his wife was in process of administration in county court, and his interest therein had not been delivered or turned over to him when he executed the mortgage, the lands were restricted within the meaning of section 7 of the Act of 1912, and that the mortgage was therefore void.

Said section 7 provides that the lands allotted to members of the Osage Tribe shall not in any manner whatever be encumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the issuance of a certificate of competency, nor shall the lands or funds of such members be subject to any claim against the same arising prior to grant of certificate of competency. And it is further provided therein as follows: "That no lands or moneys inherited from Osage allottees shall be subject to or be taken or sold to secure the payment of any indebted-

ness incurred by such heir prior to the time such lands and moneys are turned over to such heirs."

Defendant contends that notwithstanding his certificate of competency the provision quoted above would prohibit encumbrance of his inherited land prior to determination of heirship and decree of distribution in county court.

In United States v. Mullendore, 30 Fed. Supp. (N. D. Okla.) 13, the court had under consideration the above-quoted provision of section 7 so far as it pertained to the inherited tribal lands of an heir who was not a member of the tribe. The court held that in the interest of harmonious interpretation of the act it was necessary to hold that said provision applied only to those heirs not designated as unrestricted in section 6. According to that decision the lands descended to heirs holding certificates of competency and to heirs who were not members of the tribe free from all restrictions or further prohibition against alienation.

On further consideration of the provision in section 7, the court said, in substance, that even if such provision did apply to an heir who was not a member of the tribe, and notwithstanding the estate of the decedent was pending administration in county court, the requirements of said provision had been satisfied because in that case the heir was in physical possession of the land when the mortgage was executed.

And in this connection the court further said:

"Technical consideration of whether or not De Roin acquired his title upon the death of the ancestor or upon the date of the decree of distribution or at some intermediate time seems to be beside the point here, although it may be noted that the statutes of Oklahoma provide the administrator of an estate takes possession only for the purposes of administration and as soon as it appears that the lands are not necessary for the payment of debts, the lands shall be delivered to the heirs. Secs. 1193, 1218, Okla. Stat. 1931, 58 Okla. St. Ann. §§ 251, 291."

It is clear from the language of the opinion that the control of the lands by the administrator and his formal release thereof or delivery to the heirs was not essential to unrestricted alienation by heirs who were classed as unrestricted by section 6.

Assuming, however, that the provision in section 7 was a restriction or limitation of the right to encumber or alienate, the lands in the instant case were not subject to control of the administrator. They were not assets in his hands for the payment of the debts of the deceased. The deceased was a full-blood Osage Indian who had not received a certificate of competency. Therefore her lands were restricted, and free from any of her obligations. Under the various acts of Congress these lands could not be taken to satisfy the debts of the deceased owner. Act of June 28, 1906, §§ 4, 7 (34 Stat. 539); Act of April 18, 1912, sec. 7 (37 Stat. 86); Act of March 3, 1921, § 3 (41 Stat. 1249); Act of February 27, 1925, § 3 (43 Stat. 1008); Act of March 2, 1929 (45 Stat. 1480). We have so held with reference to the headrights of deceased Osages. Tucker v. Brown, 185 Okla. 234, 90 P. 2d 1071; Brunt v. Labadie, 186 Okla. 700, 100 P. 2d 267. The jurisdiction of the county court extended to the determination of heirship (In re Thompson's Estate, 179 Okla. 240, 65 P. 2d 442), but not beyond that.

It follows that there was no court or officer with power or authority to "turn over" the lands or to deliver them to the heirs. Immediately on the death of the owner they descended to the heirs free from all restrictions together with the absolute right of immediate possession.

Defendant next contends that the lands in question were restricted, or restrictions reimposed thereon, by section 3 of the Act of 1925, supra, and in support cites United States v. Johnson, 29 Fed. Supp. (N. D. Okla.) 300.

Section 3 provides in part as follows:

"Lands devised to members of the Osage Tribe of one-half or more Indian blood or who do not have certificates

of competency, under wills approved by the Secretary of the Interior, and lands inherited by such Indians, shall be inalienable unless such lands be conveyed with the approval of the Secretary of the Interior."

This section, says defendant, according to the decision in the Johnson Case, above, placed restrictions on inherited lands of two classes of heirs: First, lands inherited by members of the Osage Tribe of one-half or more Indian blood; and, second, lands inherited by members of the Osage Tribe who do not have certificates of competency. Defendant says he belongs to the first named class notwithstanding his certificate of competency. In that case we find the following language concerning section 3:

"The act plainly states that it applies to two classes: First, to lands devised to members of the Osage Tribe of one-half (½) or more Indian blood; and, second, to lands devised to members of the Osage Tribe who do not have certificates of competency."

In any event, it is clear that all Indians holding certificates of competency were excluded from the restrictions in section 3. Plaintiff belonged to that class, and his inherited lands were left free of restrictions.

In the Johnson Case the court was considering the question of restrictions on the inherited tribal lands of an unenrolled member of the tribe of less than half Indian blood. The court held that the Act of 1929, supra, reimposed restrictions on such Indians, and since the heir in that case had no certificate of competency, his inherited land was restricted by section 3 of the Act of 1925. The case is hardly in point, but it serves as some authority that Osages who have certificates of competency are not affected by section 3, supra.

The judgment is affirmed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, HURST, and DAVISON, JJ., concur. WELCH, C. J., and ARNOLD, J., absent.